No. 24-40161

# United States Court of Appeals
## for the Fifth Circuit

BOBBY BELLARD; CRAIG MESSICK; BARBRA SPEER,

*Plaintiffs-Appellants,*

v.

UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER;
PETER W.T. PISTERS, President, in his official and individual capacities;
ROSANNA MORRIS, Chief Operating Officer,
in her official and individual capacities; CARIN HAGBERG,
Chief Academic Officer, in her official and individual capacities; WELELA
TEREFFE, Chief Medical Executive, in her official and individual
capacities; ROY CHEMALY, Chief Infection Control Officer, in his official
and individual capacities; SHIBU VARGHESE, Senior Vice President for
People, Culture, and Infrastructure, in his official and individual
capacities; JOHN DOES 1-5, in their official and individual capacities,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Southern District of Texas, No. 3:22-cv-00088, Hon. Jeffrey V. Brown

## BRIEF OF APPELLANTS

H. CHRISTOPHER BARTOLOMUCCI
*Counsel of Record*
KENNETH A. KLUKOWSKI
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
cbartolomucci@schaerr-jaffe.com

May 30, 2024

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

### No. 24-40161
### Bobby Bellard, *et al.* v. University of Texas M.D.
### Anderson Cancer Center, *et al.*

The undersigned counsel of record certifies that the following persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Plaintiffs-Appellants:**

Bobby Bellard
Craig Messick
Barbra Speer

**Counsel for**
**Plaintiffs-Appellants:**

SCHAERR | JAFFE LLP
H. Christopher Bartolomucci
(cbartolomucci @schaerr-jaffe.com)
Mark R.A. Paoletta
(mpaoletta@schaerr-jaffe.com)
Edward H. Trent
(etrent@schaerr-jaffe.com)
Brian J. Field
(bfield@schaerr-jaffe.com)
Cristina Martinez Squiers
(csquiers@schaerr-jaffe.com)
Kenneth A. Klukowski
(kklukowski@schaerr-jaffe.com)

**Defendants-Appellees:**    University of Texas M.D. Anderson
Cancer Center
Peter W.T. Pisters
Rosanna Morris
Carin Hagberg
Walela Tereffe
Roy Chemaly
Shibu Varghese
John Does 1-5

**Counsel for**    FOLEY & LARDNER, LLP
**Defendants-Appellees:**    Carrie Beth Hoffman
(choffman@foley.com)
Jessica Glatzer Mason
(jmason@foley.com)
Brooke C. Bahlinger
(bbahlinger@foley.com)


*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

*Counsel of Record for*
*Plaintiffs-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants request oral argument as they believe it will significantly aid the Court's decisional process in this case. There are strong grounds for reversing the judgment below on mootness, and the issues concerning *Ex parte Young*, free exercise, equal protection, due process, unconstitutional conditions, and Title VII religious accommodation are likely to arise in future cases.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................. iii

TABLE OF AUTHORITIES ...................................................................vii

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ...........................................................2

STATEMENT OF THE ISSUES FOR REVIEW .....................................2

STATEMENT OF THE CASE ................................................................2

    A.    FACTUAL BACKGROUND .............................................3

    B.    PROCEDURAL BACKGROUND ....................................10

SUMMARY OF THE ARGUMENT .......................................................15

STANDARD OF REVIEW .....................................................................19

ARGUMENT ........................................................................................20

    I.    PLAINTIFFS' CONSTITUTIONAL CLAIMS ARE NOT MOOT BECAUSE THIS COURT CAN GRANT EFFECTUAL PROSPECTIVE RELIEF. .........................................................20

        A.    The district court correctly held that Plaintiffs had standing to sue over the suspending of their clinical privileges. ..........................................................20

        B.    This case is not moot under *Ex parte Young* because equitable relief will rehabilitate Plaintiffs' careers. ...................................................................27

        C.    Plaintiffs would prospectively benefit from injunctive and declaratory relief. ..................................30

        D.    Even partial redress satisfies Article III and precludes mootness under *Uzuegbunam*. ....................33

II.   PLAINTIFFS ARE ENTITLED TO EQUITABLE RELIEF ON
      THEIR CONSTITUTIONAL CLAIMS. ..............................................34

      A.   This Court should rule now on the merits of
           Plaintiffs' § 1983 claims................................................34

      B.   Defendants violated free exercise by denying
           Plaintiffs religious exemptions....................................36

           1.   Plaintiffs' free exercise claim is subject to
                strict scrutiny.......................................................36

           2.   Defendants' denying Plaintiffs' requests fails
                strict scrutiny.......................................................39

      C.   Defendants' contrived post-summary judgment
           standard for exemptions would violate both the
           Free Exercise Clause and the Establishment
           Clause. ........................................................................42

      D.   Defendants violated equal protection by granting
           exemptions to similarly situated employees................45

      E.   Defendants violated due process by refusing to
           give reasons for, or appeals from, the denials. ............48

      F.   Defendants imposed unconstitutional conditions
           by refusing to renew employment contracts
           because of Plaintiffs' claiming religious
           exemptions. .................................................................53

III.  PLAINTIFFS ARE ENTITLED TO RELIEF UNDER TITLE VII........55

      A.   This Court has jurisdiction to decide the Title VII
           claim now, and should do so for judicial economy.......55

      B.   The district court correctly held that Plaintiffs
           established a prima facie case that MD Anderson
           violated Title VII.........................................................56

C.    Title VII does not allow an undue hardship defense that MDA never claimed and did not offer even a scintilla of evidence to support....................................65

IV.    REMAINING INJUNCTION FACTORS ARE SATISFIED. .................67

CONCLUSION .........................................................................68

CERTIFICATE OF SERVICE....................................................69

CERTIFICATE OF COMPLIANCE .........................................70

# TABLE OF AUTHORITIES

## Cases

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*,
  611 F.3d 248 (5th Cir. 2010) ................................................. 45

*Aguilar v. Tex. Dep't of Crim. Just.*,
  160 F.3d 1052 (5th Cir. 1998) ............................................. 32

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................ 19

*Ansonia Bd. of Educ. v. Philbrook*,
  479 U.S. 60 (1986) .............................................................. 67

*Antoine v. First Student, Inc.*,
  713 F.3d 824 (5th Cir. 2013) ............................................... 65

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ............................................................ 26

*Beadle v. City of Tampa*,
  42 F.3d 633 (11th Cir. 1995) ............................................... 67

*Borough of Duryea v. Guarieri*,
  564 U.S. 379 (2011) ............................................................ 54

*Bowlby v. City of Aberdeen*,
  681 F.3d 215 (5th Cir. 2012) ............................................... 52

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786 (2011) ............................................................ 42

*BST Holdings, LLC v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) ............................................... 67

*Budget Prepay, Inc. v. AT&T Corp.*,
  605 F.3d 273 (5th Cir. 2010) ............................................... 55

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ...................................................... 40, 46

*Butts v. Aultman,*
  953 F.3d 353 (5th Cir. 2020) ............................................................. 45

*Carson ex rel. O.C. v. Makin,*
  596 U.S. 767 (2022) ......................................................................... 37

*Casas v. Am. Airlines, Inc.,*
  304 F.3d 517 (5th Cir. 2002) ............................................................. 55

*Chafin v. Chafin,*
  568 U.S. 165 (2013) ......................................................................... 27

*Christopher Vill., Ltd. P'ship v. Retsinas,*
  190 F.3d 310 (5th Cir. 1999) ............................................................. 33

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) .................................................................... 37, 43

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ......................................................................... 38

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985) ......................................................................... 45

*Crawford v. Carroll,*
  529 F.3d 961 (11th Cir. 2008) ........................................................... 66

*Daly v. Sprague,*
  675 F.2d 716 (5th Cir. 1982) ............................................................. 25

*Dandridge v. Williams,*
  397 U.S. 471 (1970) ......................................................................... 34

*Daves v. Dallas County,*
  22 F.4th 522 (5th Cir. 2022) ........................................................ 35, 56

*Davis v. Fort Bend County,*
  765 F.3d 480 (5th Cir. 2014) ........................................................ 58, 60

*Deal v. Mercer Cnty. Bd. of Educ.,*
  911 F.3d 183 (4th Cir. 2018) ............................................................. 27

*Dean v. City of Shreveport,*
    438 F.3d 448 (5th Cir. 2006) ........................................ 38, 45

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) ............................................................ 51

*ESI/Employee Sols., L.P. v. City of Dallas,*
    450 F. Supp. 3d 700 (E.D. Tex. 2020) .............................. 55

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................ 26

*Fisher v. Univ. of Tex.,*
    570 U.S. 297 (2013) ............................................................ 41

*Flint v. Dennison,*
    488 F.3d 816 (9th Cir. 2007) ............................................ 30

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ............................................................ 32

*Freeman v. City of Dallas,*
    186 F.3d 601 (5th Cir. 1999) ............................................ 52

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) ........................................ 37, 38, 40, 46

*Gomez v. Galman,*
    18 F.4th 769 (5th Cir. 2021) ............................................ 20

*Greene v. McElroy,*
    360 U.S. 474 (1959) ............................................................ 52

*Groff v. DeJoy,*
    600 U.S. 447 (2023) ..................................................... 57, 62

*Hamilton v. Dallas County,*
    79 F.4th 494 (5th Cir. 2023) ............................................ 64

*Hathaway v. Bazany,*
    507 F.3d 312 (5th Cir. 2007) ............................................ 19

ix

*Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area*
  *Transit Auth.*, 386 F.3d 1148 (D.C. Cir. 2004) ............................... 28, 29

*Hignell-Stark v. City of New Orleans,*
  46 F.4th 317 (5th Cir. 2022) ................................................. 49

*Holt v. Hobbs,*
  574 U.S. 352 (2015) ......................................................... 41

*In re Lease Oil Antitrust Litig. (No. II),*
  200 F.3d 317 (5th Cir. 2000) ........................................... 35, 36

*In re Seabulk Offshore, Ltd.,*
  158 F.3d 897 (5th Cir. 1998) ................................................. 56

*Ingraffia v. NME Hosps., Inc.,*
  943 F.2d 561 (5th Cir. 1991) ................................................. 24

*Jackson v. Wright,*
  82 F.4th 362 (5th Cir. 2023) ................................................. 26

*James v. Cleveland Sch. Dist.,*
  45 F.4th 860 (5th Cir. 2022) ................................................. 51

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022) ............................................... 36, 38, 44

*Knox v. SEIU, Local 1000,*
  567 U.S. 298 (2012) ......................................................... 27

*Koontz v. St. Johns River Water Mgmt. Dist.,*
  570 U.S. 595 (2013) ......................................................... 54

*Larson v. Valente,*
  456 U.S. 228 (1982) ......................................................... 43

*Lewis v. Ascension Par. Sch. Bd.,*
  662 F.3d 343 (5th Cir. 2011) ................................................. 38

*Malhotra v. Univ. of Ill. at Urbana-Champaign,*
  77 F.4th 532 (7th Cir. 2023) ................................................. 30

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n,*
  584 U.S. 617 (2018) ............................................................... 43

*McClelland v. Katy Indep. Sch. Dist.,*
  63 F.4th 996 (5th Cir. 2023) .................................................. 48

*McCullen v. Coakley,*
  573 U.S. 464 (2014) ........................................................ 41, 46

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010) .............................................................. 48

*McDonnell v. United States,*
  579 U.S. 550 (2016) .............................................................. 53

*Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.,*
  63 F.4th 510 (6th Cir. 2023) .................................................. 29

*Moussazadeh v. Tex. Dep't of Crim. Just.,*
  703 F.3d 781 (5th Cir. 2012) .................................................. 62

*Nken v. Holder,*
  556 U.S. 418 (2009) .............................................................. 67

*NRA v. McCraw,*
  719 F.3d 338 (5th Cir. 2013) .................................................. 45

*Owens v. Circassia Pharms., Inc.,*
  33 F.4th 814 (5th Cir. 2022) .................................................. 20

*Petro Harvester Operating Co., L.L.C. v. Keith,*
  954 F.3d 686 (5th Cir. 2020) .................................................. 19

*Phelan v. Cook County,*
  463 F.3d 773 (7th Cir. 2006) .................................................. 66

*R.W. v. Columbia Basin Coll.,*
  77 F.4th 1214 (9th Cir. 2023) ................................................ 30

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.,*
  758 F.3d 296 (D.C. Cir. 2014) ............................................... 51

*Renfroe v. Parker,*
  974 F.3d 594 (5th Cir. 2020) ................................................................ 19

*Robbins v. U.S. R.R. Ret. Bd.,*
  594 F.2d 448 (5th Cir. 1979) ................................................................ 52

*Robie v. Price,*
  No. 2:17-cv-03089, 2017 WL 3097529
  (S.D. W. Va. July 20, 2017) ................................................................. 25

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
  592 U.S. 14 (2020) .............................................................................. 42

*Rumsfeld v. FAIR,*
  547 U.S. 47 (2006) .............................................................................. 54

*Sambrano v. United Airlines, Inc.,*
  No. 21-11159, 2022 WL 486610
  (5th Cir. Feb. 17, 2022) ................................................ 37, 55, 65, 68

*Shaboon v. Duncan,*
  252 F.3d 722 (5th Cir. 2001) .............................................................. 49

*Shah v. Univ. of Tex. Sw. Med. Sch.,*
  668 F. App'x 88 (5th Cir. 2016) .......................................................... 30

*Shelby County v. Holder,*
  570 U.S. 529 (2013) ............................................................................ 42

*Shurtleff v. City of Boston,*
  596 U.S. 243 (2022) ............................................................................ 44

*Singleton v. Wulff,*
  428 U.S. 106 (1976) ............................................................................ 34

*Stefanoff v. Hays County,*
  154 F.3d 523 (5th Cir. 1998) .............................................................. 47

*Stevens v. St. Tammany Par. Gov't,*
  17 F.4th 563 (5th Cir. 2021) ............................................................... 67

*Stone v. Univ. of Md. Med. Sys. Corp.*,
  855 F.2d 167 (4th Cir. 1988) ................................................................. 24

*Super Tire Eng'g Co. v. McCorkle*,
  416 U.S. 115 (1974) ................................................................................. 33

*Tagore v. United States*,
  735 F.3d 324 (5th Cir. 2013) ................................................................. 61

*Tandon v. Newsom*,
  593 U.S. 61 (2021) ................................................................. 38, 39, 41, 67

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
  732 F.3d 535 (5th Cir. 2013) ................................................................. 68

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
  450 U.S. 707 (1981) ......................................................................... 37, 54

*Town of Greece v. Galloway*,
  572 U.S. 565 (2014) ................................................................................. 44

*United States v. Playboy Ent. Grp., Inc.*,
  529 U.S. 803 (2000) ................................................................................. 39

*United States v. Texas*,
  601 F.3d 354 (5th Cir. 2010) ................................................................. 31

*Utah v. Evans*,
  536 U.S. 452 (2002) ................................................................................. 27

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021) ............................................................................. 34

*Veasey v. Abbott*,
  888 F.3d 792 (5th Cir. 2018) ................................................................. 19

*W. Va. St. Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) ................................................................................. 43

*Walsh v. Hodge*,
  975 F.3d 475 (5th Cir. 2020) ................................................................. 48

*Weber v. Roadway Express, Inc.*,
   199 F.3d 270 (5th Cir. 2000) ................................................................ 65

## Constitutional Provisions

U.S. Const. amend. I .............................................................................. 36

U.S. Const. amend. XIV, § 1 .............................................................. 45, 48

## Statutes

28 U.S.C. § 1292(a) ................................................................................... 2

42 U.S.C. § 11151 .................................................................................... 23

Tex. Educ. Code § 65.02 ......................................................................... 20

## Regulation

Interim Final Rule with Comment Period,
   *Medicare and Medicaid Programs; Omnibus*
   *COVID-19 Health Care Staff Vaccination*,
   86 Fed. Reg. 61555 (Nov. 4, 2021) ................................................... 4, 58

## Rule

Fed. R. Civ. P. 56 ..................................................................................... 19

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ................................................ 22

EEOC,
   *EEOC Guidance on Religious Discrimination*,
   *Section 12-IV.A.2* (Jan. 15, 2021) ..................................................... 61

EEOC,
   *What You Should Know About COVID-19 and*
   *the ADA, the Rehabilitation Act, and Other EEO Laws* ................ 58, 61

Katten Muchin Rosenman LLP,
   *Advisory: Illinois Adopts New Medical Staff Summary*
   *Suspension Standard* (July 23, 2009) .................................................. 25

Elizabeth A. Lingle & Dana S. Frazier,
*Physician Defamation Candor Rarely Results in Liability*,
18 J. LEG. MED. 521 (1997)....................................................................25

Karen Jo Mcginn,
*Due Process Considerations in Suspension of a Physician's*
*Hospital Staff Privileges*, 32 AM. JUR. TRIALS 1
(orig. publ. 1985)...................................................................................25

Texas Standard Credentialing Appl. ......................................................25

## INTRODUCTION

Doctors Bobby Bellard, Craig Messick, and Barbra Bryce Speer are physicians committed to both living out their Christian faith in their professional lives and helping people overcome cancer. They fulfilled both commitments by conscientiously following all Covid restrictions during the pandemic. When MD Anderson and its officers ("MDA") instituted a Vaccine Mandate including religious accommodation, Plaintiffs requested exemptions, alongside almost 600 coworkers. MDA denied half of those requests, including Plaintiffs,' whom MDA stripped of clinical privileges—damaging their careers—and placed on leave.

Plaintiffs sued their state employer under 42 U.S.C. § 1983 and Title VII. Shortly thereafter, MDA reversed the denial and reinstated Plaintiffs. After summary judgment briefing, the district court wrongly dismissed the § 1983 claims as moot, and held that Plaintiffs established their prima facie case for Title VII, but found the issue of undue hardship to be a jury question.

This Court should reverse on mootness, because declaring the suspensions unlawful will rehabilitate Plaintiffs' careers. And to provide the injunctive relief sought in this appeal, this Court must rule on the § 1983 merits as well. This Court also has jurisdiction to hold that a judge cannot designate undue hardship a jury question under Title VII when the employer disclaimed any hardship, presented no evidence of

hardship, and both parties provided evidence that hardship was not at issue.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a) because it is an appeal of an order that denied Plaintiffs injunctive relief. Plaintiffs timely appealed by filing a notice of appeal within 30 days of the district court's order of February 9, 2024. ROA.8494.

## STATEMENT OF THE ISSUES FOR REVIEW

1.     Whether the district court erred in denying Plaintiffs' claims for injunctive relief.

2.     Whether the district court erred in concluding that Plaintiffs' claims for injunctive relief under 42 U.S.C. § 1983 are moot.

3.     Whether the district court erred in denying Plaintiffs summary judgment on Title VII liability.

## STATEMENT OF THE CASE

This case, brought by three doctors employed by the University of Texas MD Anderson Cancer Center ("MD Anderson"), concerns religious discrimination claims under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 based on denials of religious accommodation from

Defendants' Covid Vaccine Mandate.    This resulted in Defendants'
placing Plaintiffs on leave, giving notice that their employment contracts
would not be renewed, suspending clinical privileges, denying access to
campus, and prohibiting them from assisting in patient care.    Plaintiffs'
reinstatement 30 days later—after filing suit—did not erase the
constitutional and statutory violations or the injuries Plaintiffs suffered
as a result.    By February 23, 2022, Defendants had granted religious
exemptions to 310 other employees, but denied Plaintiffs' requests for
accommodation along with over 170 other employees without any
explanation or ability to appeal.    Defendants' arbitrary and unexplained
actions violated Plaintiffs' First Amendment rights to free exercise of
religion and freedom from unconstitutional conditions, Fourteenth
Amendment rights to equal protection and due process, and Title VII.
Plaintiffs are entitled to summary judgment on all these claims.

## A.    Factual Background

When the COVID-19 (Covid) vaccines first became available, MD
Anderson notified its employees that it had no plans to mandate that
employees receive the vaccine.    ROA.8184.    However, on November 4,
2021, the Biden Administration announced that healthcare providers

must require employees to receive Covid vaccinations unless the employee qualifies for a religious or medical exemption consistent with federal law. The Centers for Medicare and Medicaid Services (CMS) issued an Interim Final Rule with Comment Period, *Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61555 (Nov. 4, 2021) ("IFC"). The IFC does not require boosters, only the original the Covid vaccine, while providing for religious and medical accommodations to the mandate. *Id.* at 61555, 61572; ROA.8185. CMS guidance directs providers like Defendants to longstanding guidance from the Equal Employment Opportunity Commission (EEOC) for determining which employees are entitled to religious accommodation. ROA.8185, 8191.

In response to the IFC, Defendants mandated a Covid vaccine for MD Anderson employees ("Vaccine Mandate"). Defendant Peter Pisters, MD Anderson's President, established a Covid Core Leadership Team (CCLT), chaired by Defendant Rosanna Morris, Chief Operating Officer, and a Vaccination Task Force (VTF), under Defendant Roy Chemaly, Chief Infection Control Officer. ROA.8207–11, 8297–99, 8301. VTF recommended mitigating measures for those granted accommodations.

ROA.8304.  The CCLT, with input from Defendants Welela Tereffe, Chief Medical Executive, Carin Hagberg, Chief Academic Officer, and Shibu Varghese, Senior Vice President of People, Culture, and Infrastructure and Chief Human Resources Officer, developed the Vaccine Mandate at issue here.  ROA.8291.  While Pisters has ultimate responsibility, Varghese approved the Vaccine Mandate, including the procedure for evaluating requests for religious or medical accommodation.  ROA.8209, 8305.

Although MD Anderson already had procedures for employees to request religious accommodations from work rules, Defendants established a five-person Religious Accommodation Committee ("RAC") to review requests regarding the Vaccine Mandate, ROA.8208–10, comprised of Ashley Palmero (Legal), Courtney Hodge (HR), Ryan Roux (Chief Pharmacist), Colleen Gallagher (Chief Ethicist), and Gale Kennebrew (Chaplain), ROA.8189.  Although responsible for RAC, Varghese could not explain what qualifications any of these individuals had to evaluate requests for religious accommodation from the Vaccine Mandate.  ROA.8190–91.  Even so, Varghese approved CCLT's recommendation to shield RAC's decisions from review, prohibit anyone

from explaining to employees why requests were denied, and prohibit appeals of adverse decisions, knowing that those denied accommodation would be forced to get the vaccine or be terminated. ROA.8206–10, 8240, 8245, 8262.

Other than "comply with Title VII," RAC members could not describe how they were to evaluate a claim for religious accommodation (having no formal criteria), evaluating requests without any knowledge of the employee's identity or position and without limit on the number they could grant. ROA.8192–8200. RAC considered only the employee's written request, determining only if the employee expressed a sincerely held religious belief, observance, or practice that conflicted with receiving the vaccine. ROA.8195–96. Defendants acknowledge they could accommodate every religiously objecting employee. ROA.8199.

MDA began accepting religious accommodation requests to the Vaccine Mandate in November 2021. The process "paused" after the IFC was enjoined on November 30, 2021, and resumed after the Supreme Court upheld the IFC in January 2022. ROA.8214–15.

Bellard and Speer, both anesthesiologists, applied for religious accommodation in November 2021 and were promptly denied without

explanation.  ROA.8218, 8236.  Both requested to speak with someone, but Varghese told them through his assistant that no explanation would be forthcoming.  ROA.8219, 8236–38.  Indeed, Speer's requests to Varghese and Hagberg resulted in no information regarding her denial, something Varghese's office ensured Hagberg knew before she responded to Speer.  ROA.8236–39.  Both doctors made second requests, again denied without explanation.  ROA.8221, 8225, 8241, 8243.[1]  Messick, a colorectal surgeon, also requested accommodation in November 2021, but in February 2022 he was informed, without explanation, that his request was denied.  ROA.8227–30.

Although granting accommodations would cause no hardship, the RAC initially denied nearly as many requests as it granted (for November 2021, 292 and 298, respectively), yet no one from RAC can explain their vote on *any* employee's request, including Plaintiffs'.  ROA.8199, 8201–06, 8214, 8226, 8243, 8249.  They took no notes and rarely discussed requests.  ROA.8195, 8201.  Varghese ignored employees' requests for

---

[1] Highlighting RAC's arbitrariness, Gallagher voted to approve Speer's accommodation request in November 2021 (in the minority), but then denied the same request in January 2022.  She is unable to explain her votes, ROA.8244, an inevitable outcome when Defendants established no criteria and failed to prepare those making these unappealable decisions.

assistance or explaining unequal treatment and never reviewed RAC's work to ensure evaluating requests consistent with equal protection and Title VII. ROA.8198, 8236–39, 8252. All Defendants will say is how each RAC member voted and the majority prevailed. Defendants' policy is no explanations, no appeals. ROA.8202–07.

By February 23, 2022, Defendants granted 385 exemptions, including 310 for religion. ROA.8262. Although Defendants denied Plaintiffs accommodation, Defendants approved similarly situated employees for the same religious reasons articulated by Plaintiffs, including other surgeons and anesthesiologists, with similar job duties, working in similar proximity to patients and staff. ROA.8246–49.

Those denied exemptions, including Plaintiffs, had the option of getting the vaccine or losing their job. ROA.8262.[2]  On February 23, 2022, Defendants, through Hagberg, placed Plaintiffs on leave, gave official notice that their employment contracts would not be renewed, suspended their clinical privileges, denied them access to resources,

---

[2] Although employees were permitted to submit subsequent applications, Defendants provided no guidance on what needed for success. ROA.8259–61. Indeed, anesthesiologist Katy French, applied three times before her accommodation request was granted at the last minute, all without explanation. ROA.8246–47.

prohibited them from assisting in patient care, and barred them from campus. The only "cure" was to get a vaccine that violated their religious beliefs. ROA.8262–80. Supervisors were instructed to tell Plaintiffs' colleagues and patients that "[Name] is no longer with the institution." ROA.8263.

On March 15, 2022, MDA notified staff by email that due to "updated legal guidance" (which was never identified), all previously denied exemptions would be reconsidered, with no suggestion regarding results. ROA.8283. Defendants tasked the law firm Littler Mendelson ("Littler") with reconsidering those denials. ROA.8284. No Defendant seems to know what information or directions was given to Littler to allow them to do so, or what process Littler used. ROA.8284–86.[3] Yet on March 21, 2022, Plaintiffs and 170 others (173 in total) suddenly had their requests for accommodation reversed. ROA.8284. Ultimately, 567 total exemptions were granted. ROA.8287.

But the damage is irreversible. Plaintiffs must now explain on applications for recredentialing (even with MDA), credentialing with

---

[3] By March 13, 2022, Littler had reviewed previously denied requests, granting 103 requests while upholding two denials. ROA.8285. No explanation is given for those decisions.

another institution, and renewing Texas medical licenses or board recertifications, why their clinical privileges were revoked or suspended in February/March 2022. ROA.8267–68. They must likewise disclose this fact if compelled to seek employment elsewhere. Even after reinstatement, the need to regularly report the suspension of their clinical privileges to the relevant authorities will cause future harms flowing from Defendants' violations of Plaintiffs' rights.

## B.   PROCEDURAL BACKGROUND

Plaintiffs filed suit on March 18, 2022, under 42 U.S.C. § 1983 against six MD Anderson officers ("Individual Defendants") and against MD Anderson itself under Title VII. ROA.183. Defendants filed a Partial Motion to Dismiss (MTD) on October 12, 2022, before discovery commenced. ROA.223. On May 16, 2023, the district court dismissed Plaintiffs' individual-capacity claims citing qualified immunity, while denying the MTD regarding official-capacity § 1983 claims. ROA.643. On August 2, 2023, the court denied Plaintiffs' Motion for Reconsideration addressing qualified immunity for several Individual Defendants under Counts III and IV based on information learned during discovery and denied leave to amend the Complaint to add those facts.

ROA.1704.  Plaintiffs have satisfied all conditions precedent for bringing this action.  ROA.8350–51.

During discovery, Defendants' witnesses—both individual and 30(b)(6)—testified repeatedly under oath that Defendants had no idea why they denied Plaintiffs' requests for religious accommodation, that they reviewed files individually and took no notes of applicants or discussions.  ROA.8202–05.  Defendants could not recall anything when shown applications to refresh recollections, could not identify any language in the requests that concerned them, and repeatedly asserted that it was impossible to reconstruct why the applications were denied. ROA.8202.  When shown other employees' applications, Defendants could not determine whether those requests were granted or denied and could not identify criteria to question sincerity or religiosity.  ROA.8204–05. Nor could Defendants explain why a coworker with a similar job was denied twice but then granted on the third attempt, while denying Plaintiffs.  ROA.8247.  Nor could one witness explain why she voted (in the minority) to grant Speer's request the first time it was filed, but later denied Speer's substantively identical second request.  ROA.8244–45.

Defendants made this case enormously more burdensome (and

expensive) than necessary, employing gratuitous tactics during discovery against three private litigants who have no financial support.  In addition to overbroad document requests, Defendants informally demanded by email that Dr. Speer produce her personal prayer journal, containing intimate details of a wife and mother of special-needs children pleading with her God, despite never serving a Request for Production (RFP) under Fed. R. Civ. P. 34(b) and the journal not being responsive to any RFP that was properly served.  ROA.680.  The district court nevertheless compelled the journal's production, ignoring Plaintiffs' Rule 34 objections.  ROA.7029.  When Plaintiffs produced chat threads with coworkers who were criticizing the policies and politics of their government employer, Plaintiffs redacted those non-parties' comments and identities, citing First Amendment privilege.  ROA.686.  The court granted Defendants' demand for unredacted versions, forgetting to perform the heightened-scrutiny analysis required by the First Amendment.[4]  ROA.7029.  Defendants also deposed several of Plaintiffs' coworker friends.  When those friends expressed beliefs that Plaintiffs

---

[4] The district court's errors regarding discovery, refusing leave to amend, and qualified immunity are not part of this interlocutory appeal.

were sincere in their faith, Defendants harangued them, demanding to know what theological training or ministry qualifications they possessed to express such views.  ROA.464.  When counsel for one deponent demanded that Defendants' counsel stop "yelling at [his] client," Defendants' counsel angrily yelled in response, "I'm not yelling.  You can ask my fiancée what yelling is."  ROA.484.  Defendants never cited those harassing and irrelevant third-party productions and depositions in merits briefing.

Defendants moved for summary judgment on July 7, 2023. ROA.1177.  Plaintiffs moved for summary judgment on October 9. ROA.1739.  On October 13, Plaintiffs moved to strike as a sham affidavit a declaration by Defendants' 30(b)(6) witness who repeatedly swore Defendants had no recollection as to why Plaintiffs' requests were denied, contradicting her sworn testimony to later say that Defendants denied the requests because they concluded Plaintiffs were insincere. ROA.6805.  The district court denied Plaintiffs' motion.  ROA.8441.

On February 9, 2024, the district court denied Plaintiffs summary judgment.  ROA.8458.  The court held that Plaintiffs' constitutional claims were moot, holding that the Court could not grant any prospective

remedy, denying Plaintiffs declaratory or injunctive relief. ROA.8448. The court also held that (1) Plaintiffs had established that Defendants had suspended Plaintiffs' clinical privileges, (2) that suspension was an injury-in-fact, and (3) an adverse employment action. ROA.8452. But the court denied Plaintiffs equitable relief on Title VII, holding it is a jury question whether granting three additional religious accommodations to Plaintiffs in addition to the 310 already granted would be an undue hardship on MD Anderson. ROA.8454–58.

On February 19, Plaintiffs moved for reconsideration on the undue hardship determination, presenting that (1) Defendants never claimed an undue hardship, (2) Defendants instead *disclaimed* any undue hardship, (3) there was no evidence from either party regarding an undue hardship, and (4) Defendants' witnesses admitted under oath that three more accommodations would *not* be an undue hardship. ROA.8460–65. On March 20, the court denied reconsideration regarding undue hardship, but granted reconsideration in part, holding that Plaintiffs had established sincerity and adverse employment action as matters of law. ROA.8873.

Plaintiffs filed this interlocutory appeal on March 20, 2024.

14

ROA.8494.   On May 6—almost two months after the reconsideration order—Defendants increased this case's unnecessary expense yet again, moving for reconsideration-of-reconsideration, raising issues rejected at summary judgment and Plaintiffs' subsequent Motion for Reconsideration.   Dist. Ct. ECF 117.[5]   Defendants added the argument that Plaintiffs had not stated legitimate religious beliefs in their accommodation requests because (1) Plaintiffs did not quote enough Bible verses, (2) the verses cited were not sufficiently relevant to modern vaccinations, and (3) claiming to be led by the Holy Spirit is not cognizably religious.   *Id.*  Plaintiffs responded that because Defendants are a government employer, their post-hoc, contrived standard violated the Establishment, Free Speech, and Free Exercise Clauses.   Dist. Ct. ECF 119.   Defendants' motion for reconsideration-of-reconsideration remains pending.

## SUMMARY OF THE ARGUMENT

In this Covid Vaccine Mandate case, Plaintiffs Bobby Bellard, Craig Messick, and Barbra Bryce Speer sued MD Anderson and its officers

---

[5] Because this Court's order adding recent district court filings to the ROA has not yet been implemented, Plaintiffs cite district court docket numbers for ECF 117 and 119.

("MDA") under 42 U.S.C. § 1983 for violations of free exercise, due process, equal protection, and unconstitutional conditions, and under Title VII for failure to provide reasonable religious accommodation. MDA instead stripped Plaintiffs' clinical privileges and suspended them, reinstating them only after they filed suit.

The court below held that the § 1983 claims are moot because Plaintiffs were reinstated, despite precedent that stripping privileges inflicts career-damaging injury. The court ignored precedent from five circuits that such injuries can be mitigated by equitable relief, with an opinion by now-Chief Justice Roberts directly on point as to why *Ex parte Young* authorizes declaratory and injunctive relief here because it would prospectively benefit Plaintiffs' careers.

This Court must also rule on the merits to provide Plaintiffs equitable relief. Discovery is complete and dispositive motions have been ruled upon. A remand would frustrate this appeal for injunctive relief, require a second round in the district court on the same record, plus a second appeal, unnecessarily consuming resources of the lower court, this Court, and months of time for Plaintiffs at significant cost, which is a worsening hardship.

On the merits, MDA violated free exercise. MDA's Vaccine Mandate allows individual exemptions, triggering strict scrutiny. MDA does not even suggest a compelling interest in denying Plaintiffs exemptions, or explain why denials were necessary. After this appeal was filed, MDA filed a supplemental motion adding the argument that Plaintiffs do not cite enough Bible verses sufficiently relevant to vaccines to be deemed proper religious beliefs. MDA's newly contrived standard violates the Establishment, Free Speech, and Free Exercise Clauses.

MDA's denials even more clearly violate equal protection. Similarly situated coworkers were granted exemptions, but MDA offers no explanation for the unequal treatment. MDA even instructed its experts during depositions not to answer Plaintiffs' questions on that issue.

MDA also violated due process. Plaintiffs were deprived of their religious liberty interest, as well as property interests in their clinical privileges. The denials included no reasons or opportunity to appeal those deprivations, which state actors cannot do.

Those denials also precipitated unconstitutional conditions. Plaintiffs have annual employment contracts. MDA notified them that because they were denied religious accommodation, their future

employment contracts would be denied unless they violated their religious convictions by getting the vaccine.

Finally, MDA violated Title VII. MDA's 30(b)(6) witness testified under oath that MDA had not questioned sincerity and had no idea why accommodation was denied, but during summary judgment briefing she filed an affidavit contradicting her deposition, claiming that MDA doubted sincerity. Nonetheless, the district court correctly held that Plaintiffs established religious sincerity as a matter of law, and that their suspensions were adverse employment actions. Although Plaintiffs established their prima facie case, the court held that it was a jury question as to whether increasing the number of unvaccinated employees from 310 to 313 would create an undue hardship regarding patient safety. However, MDA never claimed any hardship, testified that all unvaccinated employees could be accommodated without hardship, and both sides presented evidence that the denials would not cause any hardship. This Court should accordingly hold that Title VII is not at issue as a matter of law.

For all these reasons, this Court should reverse and grant Plaintiffs equitable relief.

## STANDARD OF REVIEW

"This Court reviews questions of jurisdiction *de novo*, including [whether] a case or controversy has become moot." *Veasey v. Abbott*, 888 F.3d 792, 798 (5th Cir. 2018). This Court also "reviews a district court's grant [or denial] of summary judgment *de novo*, applying the same legal standards as the district court." *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 691 (5th Cir. 2020) (italics added).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). A material fact is one that "might affect the outcome of the suit under the governing law," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To overcome summary judgment, Defendants must offer more than "a scintilla of evidence" and present sufficient facts to allow a trier of fact to find in their favor. *Id.* at 252. Conclusory allegations and unsubstantiated assertions are insufficient. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). The Court must construe all evidence and

make all inferences in favor of the nonmoving party. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022).

## ARGUMENT

I. **PLAINTIFFS' CONSTITUTIONAL CLAIMS ARE NOT MOOT BECAUSE THIS COURT CAN GRANT EFFECTUAL PROSPECTIVE RELIEF.**

Defendants violated Plaintiffs' constitutional rights through Defendants' Vaccine Mandate. They are Individual Defendants Peter Pisters, Rosanna Morris, Carin Hagberg, Welela Tereffe, Roy Chemaly, and Shibu Varghese under 42 U.S.C. § 1983, and MD Anderson under Title VII (collectively "Defendants" or "MDA"). Individual Defendants are state actors as officers MD Anderson, an agency of the State of Texas. TEX. EDUC. CODE § 65.02; ROA.8183. Individual Defendants acted under color of law by formulating and implementing MD Anderson's Vaccine Mandate at issue here. *Gomez v. Galman*, 18 F.4th 769, 775–76 (5th Cir. 2021). Even with the rescission of CMS's IFC and Defendants' Vaccine Mandate, Plaintiffs' § 1983 claims are not moot.

### A. The district court correctly held that Plaintiffs had standing to sue over the suspending of their clinical privileges.

The court below correctly found that Defendants suspended Plaintiffs' clinical privileges at MD Anderson. That suspension is an

Article III injury, damaging Plaintiffs' careers.  As the court held, Plaintiffs thus had standing to sue.

**1.** Defendants unlawfully suspended Plaintiffs' medical privileges at MD Anderson, barring them from MD Anderson facilities and patient care.  This suspension permanently damaged Plaintiffs' professional careers.  ROA.8267–68, 8274, 8280.  A physician has the privileges granted by Pisters as the Governing Body.  ROA.2640, 8290.  When applying for privileges, Article 3.3.C of MDA's Bylaws require disclosing "any voluntary or involuntary limitation, restriction, reduction, probation, suspension, loss, or termination or denial of medical staff membership and clinical privileges."  ROA.2631.  Privileges at MDA are privileges for the assessment of, diagnosis of, consulting regarding, and treatment of, patients.  ROA.2640.  When Plaintiffs were placed on leave, the accompanying letter specified that Plaintiffs "will no longer have access to MD Anderson resources, including email or building access."  ROA.8265.  Also:

- o "You will not be allowed to return to campus except with the express prior written permission of HR."
- o "You shall not participate in any patient care and/or research activity."

○ "You shall not attend any departmental or divisional function or meeting, including virtual meetings and gatherings."

ROA.8279.

MDA's Bylaws illustrate what Plaintiffs can expect from any credentialing, licensing, or certifying institution, or any potential future employer. An applicant "bears the burden of providing all information requested and for resolving any questions raised during the application process. Failure to submit … shall result in … withdrawal … from further processing." ROA.2631. "Misstatements … shall be grounds for withdrawal" or revocation. ROA.2631. Thus, Plaintiffs must disclose this adverse action.

**2.** Defendants admit that they prohibited Plaintiffs from treating patients or engaging with patient care, even barring them from the premises and cutting off email and phone access. ROA.8262–81. That is a textbook example of suspension.[6] Indeed, the Texas Standard Credentialing Form asks at Question No. 3: "Have your clinical

---

[6] "Suspend" means to "interrupt; postpone; defer" or "temporarily keep (a person) from performing a function, occupying an office, [or] holding a job[.]" *Suspend*, BLACK'S LAW DICTIONARY 1584 (11th ed. 2019). "Suspension" means a "temporary deprivation of a person's powers or privileges, esp. of office or profession." *Suspension, id.*

privileges or Medical Staff membership at any hospital or healthcare institution ever been denied, suspended, revoked, restricted, denied renewal *or* subject to probationary *or* to other disciplinary conditions (for reasons other than non-completion of medical records when quality of care was not adversely affected) *or* have proceedings toward any of those ends been instituted or recommended by any hospital or healthcare institution, medical staff or committee, or governing board?" (emphases added). ROA.8268. The disjunction "or" means that "clinical privileges" being "denied, suspended, revoked, restricted, denied renewal" is not just for disciplinary reasons, so Plaintiffs must report the suspension of their privileges in February and March 2022 regardless of the reason.

This accords with federal law's definition, which provides: "The term 'clinical privileges' includes privileges, membership on the medical staff, and the other circumstances pertaining to the furnishing of medical care under which a physician … is permitted to furnish such care by a health care entity." 42 U.S.C. § 11151(3); *see also* ROA.8352. The statute also provides, "[t]he term 'adversely affecting' includes reducing, restricting, suspending, revoking, denying, or failing to renew clinical privileges or membership in a health care entity." 42 U.S.C. § 11151(1).

Likewise, in examining another provider's bylaws, this Court held that clinical privileges include "(1) the right to admit patients for treatment, (2) access to the hospital and its facilities, equipment, and personnel, and (3) access to hospital patients for consultation, observation, treatment, and study as approved by admitting physicians, patients, and appropriate committees." *Ingraffia v. NME Hosps., Inc.*, 943 F.2d 561, 564 (5th Cir. 1991). That accords with MDA's definition of "clinical privileges" in its Bylaws: "the setting-specific authorization granted to a Practitioner … to provide specific patient care, treatment, and services at MD Anderson pursuant to the procedures in the Medical Staff Bylaws as set forth in Article III and/or Article IV." ROA.2618.

This is an Article III injury-in-fact, because "revocation of clinical privileges, *even temporarily*, can have a devastating effect on a physician's professional reputation, make it difficult to obtain malpractice insurance, and severely jeopardize his prospects of future employment." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 171 (4th Cir. 1988) (emphasis added). Suspending privileges thus has a

24

"significant adverse impact on a physician's career and reputation."[7]  At a public healthcare facility, suspending privileges requires due process, and causes "damage to reputation" and other professional injuries,[8] resulting in a "damaged medical career."[9]  It is a "permanent black mark" on a physician's record.  *Robie v. Price*, No. 2:17-cv-03089, 2017 WL 3097529, at *6 (S.D. W. Va. July 20, 2017).  When seeking credentials or recertifications, it is standard to ask a physician if his privileges have ever been suspended.[10]  ROA.8280.  Consequently, "the loss of clinical privileges is a serious matter to a doctor, the reason for which would be questioned in an employment interview."  *Daly v. Sprague*, 675 F.2d 716, 726 (5th Cir. 1982).

---

[7] Katten Muchin Rosenman LLP, *Advisory: Illinois Adopts New Medical Staff Summary Suspension Standard* 1 (July 23, 2009), https://katten.com/files/20091_illinois_adopts_new_medical_staff_summary_suspension_standard.pdf.

[8] Karen Jo Mcginn, *Due Process Considerations in Suspension of a Physician's Hospital Staff Privileges*, 32 AM. JUR. TRIALS 1, § 13 (orig. publ. 1985).

[9] Elizabeth A. Lingle & Dana S. Frazier, *Physician Defamation Candor Rarely Results in Liability*, 18 J. LEG. MED. 521, 537 (1997).

[10] *See* Texas Standard Credentialing Appl. at 8, https://www.tdi.texas.gov/forms/finmcqa/lhl234.pdf .

**3.** The career consequences for Plaintiffs will likely be significant unless this Court grants declaratory relief that the suspension was illegal and not due to fault or deficiency on Plaintiffs' part, and enjoins Defendants accordingly. Individual Defendants are not shielded by sovereign immunity when prospective equitable relief can redress Plaintiffs' injuries. *See Ex parte Young*, 209 U.S. 123 (1908). Regarding future harm, Plaintiffs need only face "a realistic danger of sustaining a direct injury" to satisfy standing, which they have established. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). This is an injury-in-fact caused by Defendants' actions.

Additionally, these harms are fairly traceable to Individual Defendants' implementing and overseeing the Vaccine Mandate, including the violations of Plaintiffs' rights, refusing to even evaluate Plaintiffs' denials when Bellard and Speer begged Varghese and Hagberg to do so in November 2021. ROA.8219–21, 8236–40. That is sufficient for traceability under *Young*. *Jackson v. Wright*, 82 F.4th 362, 367–69 (5th Cir. 2023).

Finally, redressability is met where a decision's "practical consequence" would make it more likely that the relief would redress

26

Plaintiffs' injuries. *Utah v. Evans*, 536 U.S. 452, 464 (2002). Plaintiffs need show only that it is likely that they "would benefit in a tangible way from the court's intervention." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018). Removing "even one obstacle …, even if other barriers remain, is sufficient to show redressability." *Id.* at 190. Plaintiffs clearly satisfy Article III standing.

**B.   This case is not moot under *Ex parte Young* because equitable relief will rehabilitate Plaintiffs' careers.**

**1.**   Moreover, Defendants' rescinding their Vaccine Mandate during this litigation on July 25, 2023, ROA.8351, does not moot Plaintiffs' § 1983 claims. "[A] case becomes moot only when it is *impossible* for a court to grant any effectual relief whatever" to plaintiffs. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citations and internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307–08 (2012) (internal quotation marks and brackets omitted). Plaintiffs have a vital stake in the litigation; their careers may depend on it.

**2.**   The circuits rightly agree that such facts preclude mootness, and D.C. Circuit precedent is instructive here. As now-Chief Justice

Roberts began when discussing a twelve-year-old girl was arrested at a metro station for eating a french fry, "No one is very happy about the events that led to this litigation." *Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1150 (D.C. Cir. 2004). There, a new D.C. zero-tolerance food policy overlooked the fact that children were ineligible to receive a wrist-slap ticket like adults, leaving criminal arrest as the only option for infractions by children. *See id.* at 1150–52. "The district court described the policies that led to her arrest as 'foolish,' and indeed the policies were changed after those responsible endured the sort of publicity reserved for adults who make young girls cry." *Id.* at 1150. After repealing the policy, local officials argued that the case was moot. *Id.* at 1152. The girl's mother argued it was not moot because she was seeking "a judicial declaration deeming her allegedly unlawful arrest a 'detention.' Such an order would relieve [the girl] of the burden of having to respond affirmatively to the familiar question, 'Ever been arrested?' on application, employment, and security forms.'" *Id.* (citation omitted). As Chief Justice Roberts noted, the D.C. Circuit had "approved such relief in the past." *Id.*

The D.C. Circuit held that the case was not moot, stating, "This

action is justiciable with respect to both the District of Columbia and [its agency]." *Id.* The government's action, when coupled with the requested relief for future employment prospects and professional opportunities, both "confers standing and defeats mootness," Chief Justice Roberts wrote the court's holding that "redress in the form of an order of expungement and a declaration that [the girl's] arrest was a detention," *id.* at 1153, is "prospective relief," *id.* at 1152.

Several circuits share the view that such relief is prospective in nature and therefore authorized by *Young*, defeating mootness. The Sixth Circuit held that expunging negative records "may qualify as prospective relief to remedy a constitutional violation…. Other circuits have similarly found that expungement of negative records was prospective and not barred by sovereign immunity in analogous settings." *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 516 (6th Cir. 2023) (citing cases). The Ninth Circuit held that *Young* authorizes relief when "the [reliefs] sought are not limited merely to past violations: they serve the purpose of preventing present and future harm to [Plaintiffs]. Therefore, they cannot be characterized solely as retroactive injunctive relief and are not barred by the Eleventh

Amendment." *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *see also Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 536 (7th Cir. 2023); *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1227 (9th Cir. 2023). These circuits show a consensus on this point.

**3.**    This Court endorsed similar reasoning in an unpublished opinion. *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 668 F. App'x 88, 88 (5th Cir. 2016), *aff'g*, 129 F. Supp. 3d 480 (N.D. Tex. 2015). Rather than create a circuit split by repudiating *Shah*, this Court should elevate *Shah*'s reasoning to a published holding.

## C.    Plaintiffs would prospectively benefit from injunctive and declaratory relief.

Plaintiffs' § 1983 claims are therefore not moot because under *Young* sovereign immunity does not bar the prospective equitable relief Plaintiffs seek. This Court can separately grant injunctive and declaratory relief, each of which would benefit Plaintiffs immensely.

**1.**    First, Plaintiffs still seek an injunction that will prospectively benefit them. The operative Complaint seeks an injunction "not [to] terminate or refuse to renew annual [employment] contracts on any ground relating to this lawsuit." ROA.202–03. Plaintiffs have annual employment contracts that must be renewed ever year (signed by Pisters,

on the recommendation of Hagberg—both are Defendants here), and absent a court judgment, Defendants could cite the fact that there is a suspension of privileges on Plaintiffs' record as grounds for non-renewal. Plaintiffs have a vital stake in an injunction prohibiting Defendants from taking such action.

The Complaint also seeks "any other relief that the Court deems just, proper, and equitable," ROA.203. It would be just, proper, and equitable for this Court to issue a mandatory injunction to mitigate Plaintiffs' injury. A mandatory injunction "compels defendants to promptly and affirmatively act in a specific and extremely extensive manner." *United States v. Texas*, 601 F.3d 354, 362 (5th Cir. 2010). Specifically, this Court could enjoin Defendants to furnish Plaintiffs with documentation that Plaintiffs can append to all future applications for credentialing, license renewal, board recertification, future employment, or other disclosures of their privileges suspension. Such a letter should acknowledge that a federal court determined that Defendants' suspension of Plaintiffs' privileges violated federal law, and was not due to any fault, impropriety, lack of concern for patient safety, or misconduct

on Plaintiffs' part.  Alternatively, this Court could order the document to include whatever contents the Court deems appropriate.

**2.**    But regardless, Plaintiffs are entitled to declaratory relief separate from any injunctive relief.   Plaintiffs separately seek declaratory judgment, ROA.201–02, apart from seeking an injunction, ROA.202–03.    A declaratory judgment would provide Plaintiffs meaningful relief, so even if an injunction were moot, the § 1983 claims are not.  Even without an injunction, a declaratory judgment from this Court that the suspension flowed from Defendants' illegally denying Plaintiffs religious exemptions would mitigate the harm to Plaintiffs' careers.  *See Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (holding *Ex parte Young* authorizes suits where relief sought is "declaratory *or* injunctive") (emphasis added).   This Court could mitigate that harm by enabling them to attach to every disclosure of the suspension an explanation that a federal court declared the suspension unlawful.

Courts can issue declaratory judgments without an injunction when "it is substantially likely" to redress actual or future harms.  *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (plurality opinion).  Just so here.

Because Plaintiffs requested both declaratory *and* injunctive relief, this Court "ha[s] the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121 (1974) (internal quotation marks omitted).  So even if "the case for an injunction dissolved with the subsequent" change in Defendants' current actions, Plaintiffs "still retain sufficient interests and injury as to justify the award of declaratory relief." *Id.* at 121–22.  Even if "the case for an injunction dissolved" due to mootness, *id.*, Plaintiffs' "request for a declaratory judgment continues to present a live dispute because this court can still provide adequate relief." *Christopher Vill., Ltd. P'ship v. Retsinas*, 190 F.3d 310, 315 (5th Cir. 1999).  Plaintiffs' § 1983 claims are not moot.

## D.   Even partial redress satisfies Article III and precludes mootness under *Uzuegbunam*.

This is true even if this Court determines that neither an injunction nor a declaratory judgment would fully remedy Plaintiffs' injury-in-fact. Any professional authority that might be concerned about Plaintiffs' suspension should give weight to a federal court ruling that the suspension was illegal.  Even absent an injunction, declaratory judgment

would mitigate the stain of the black mark on Plaintiffs' records. While not "full redress," such a judgment and opinion from this Court would "effectuate a partial remedy" that satisfies redressability, precluding mootness. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021).

This Court should accordingly reverse the court below.

## II.  PLAINTIFFS ARE ENTITLED TO EQUITABLE RELIEF ON THEIR CONSTITUTIONAL CLAIMS.

### A.  This Court should rule now on the merits of Plaintiffs' § 1983 claims.

After holding that the § 1983 claims are not moot, this Court should rule on the merits of the case rather than remand because Plaintiffs appeal the denial of injunctive relief and this case meets the criteria for immediate resolution on the merits. This Court must address both mootness and the merits to grant relief.

When the lower court has not ruled on the merits, but those merits were fully presented, this Court can rule on the merits rather than remand for a merits decision. *See Dandridge v. Williams*, 397 U.S. 471, 476 n.6 (1970). "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). This Court has "authority

to address them … if the answers have a significant bearing on [the injunction] ruling." *Daves v. Dallas County*, 22 F.4th 522, 528 (5th Cir. 2022) (en banc).

Such is the case here. Addressing the merits is required to reverse the denial of an injunction. The correct result for the § 1983 claims is clear, as explained below. Discovery is complete. Summary judgment was fully briefed on both sides, and was decided. Even if the order appealed from did not encompass all the counts in this case, this Court would still have jurisdiction under § 1292(a)(1) to decide them. "Jurisdiction extends to certain related issues that have been sufficiently developed so as not to require further development at the trial court level." *In re Lease Oil Antitrust Litig. (No. II)*, 200 F.3d 317, 320 (5th Cir. 2000). Here, the summary judgment order and related reconsideration order encompass all counts.

A remand here would result in nothing except months more awaiting another district court opinion, with an inevitable second appeal to this Court with precisely the same record and legal arguments presented here. It would waste scarce judicial resources both in the trial court and this Court, imposing perhaps a couple years of additional

burden and cost for three individual Plaintiffs who have litigated for more than two years, adding to the $2.2 million in legal expenses that Defendants' exorbitant litigation tactics have precipitated (which Defendants can easily manage, with $7 billion in annual revenues plus insurance coverage). Remand here "would make no practical sense, and [this Court] ha[s] jurisdiction to avoid that oddity. In short, it would waste judicial resources without any offsetting benefit in the form of a more fully developed record." *In re Lease Oil*, 200 F.3d at 320.

### B.    Defendants violated free exercise by denying Plaintiffs religious exemptions.

Turning to the merits, Plaintiffs are entitled to declaratory and injunctive relief on their § 1983 claims. Defendants violated the Free Exercise Clause when they denied Plaintiffs' religious exemptions from the Vaccine Mandate because Defendants failed to prove those denials were narrowly tailored to achieve a compelling public interest.

### 1.    Plaintiffs' free exercise claim is subject to strict scrutiny.

The Free Exercise Clause, U.S. Const. amend. I, protects "those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (or abstention from) physical acts." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (internal quotation

marks omitted).  Government burdens religion when it put substantial "pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981).  "The Free Exercise Clause of the First Amendment protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson ex rel. O.C. v. Makin*, 596 U.S. 767, 778 (2022) (internal quotation marks omitted).  Defendants' denying exemptions imposes a substantial burden, coercing Plaintiffs into "a choice between their job(s) and their jab(s)." *Sambrano v. United Airlines, Inc.,* No. 21-11159, 2022 WL 486610, at *8 (5th Cir. Feb. 17, 2022) (cleaned up), *reh'g denied,* 45 F.4th 877 (5th Cir. 2022); *see also Thomas*, 450 U.S. at 717.  Unwilling to violate their faith, Plaintiffs effectively lost their jobs when Defendants denied their requests for religious exemptions.  ROA.8265, 8272, 8277–79.

While the Free Exercise Clause is generally not offended by policies that are "neutral and of general applicability," *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993), a policy is not generally applicable if it allows for individual exemptions, *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021).  This Vaccine Mandate

specifically allows for exemptions; Defendants granted 298 in November 2021 alone. ROA.8214. Because the Vaccine Mandate is not generally applicable, strict scrutiny applies. *Kennedy*, 597 U.S. at 526.

Under strict scrutiny, government must "demonstrat[e] its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Id.* at 525. It "places the burden on the government to prove that its actions are narrowly tailored to achieve a compelling government interest," *Lewis v. Ascension Par. Sch. Bd.*, 662 F.3d 343, 348 (5th Cir. 2011) (per curiam), and is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). It fully applies to Covid restrictions. *Tandon v. Newsom*, 593 U.S. 61, 64–65 (2021) (per curiam). If the government can achieve a compelling interest without burdening religion, it must do so. *Fulton*, 593 U.S. at 541. Moreover, "a trial court must make a factual determination that there was a strong basis in evidence for the conclusion that [denial of religious exemption] was necessary." *Dean v. City of Shreveport*, 438 F.3d 448, 455 (5th Cir. 2006). Courts applying strict scrutiny never give government "the benefit of the doubt." *United States*

*v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000). If government fails to carry its burden, this Court must strike down its action. *Id.* at 827.

## 2. Defendants' denying Plaintiffs' requests fails strict scrutiny.

Defendants fail both prongs. First, Defendants admit there was *no* governmental interest (including the purported goal of stopping Covid spread[11]) in denying Plaintiffs exemptions. Defendants cannot offer a different interest now. *Cf. Tandon*, 593 U.S. at 62.[12] And by granting some religious accommodations, Defendants concede that the health interest does not trump the religious-liberty interest. After granting 310

---

[11] Federal officials declared that the IFC was "to prevent [healthcare] workers from infecting their patients with a potentially deadly disease" because "[v]accinated people do not carry the virus—they don't get sick." ROA.8311, *see also* ROA.8309, 8313–19. Then-CDC Director Rochelle Walensky later admitted that claim is false. ROA.8311. Defendants offer no reason for their Vaccine Mandate other than complying with the IFC. ROA.8186.

[12] Defendants failed to prove the vaccine stops Covid. With 89 percent of over 22,000 employees vaccinated, MDA recorded at least 8,411 infections. ROA.8215, 8325–26. They admit to a breakthrough infection rate (when a vaccinated person later contracts Covid) of 14 percent for those vaccinated in January 2022. ROA.8322–25. Protection against infection drops so quickly after vaccination that the residual protection is not useful as a public-health requirement. ROA.3298–3303, 8328–39. Pisters admitted it provides only minimal protection. ROA.8295. Nor can Defendants' experts help, because they disclaimed being experts on this issue. ROA.3574–81, 3626, 3874.

religious exemptions to people working in similar positions and objecting for similar reasons, Defendants cannot articulate *any* reason why they denied Plaintiffs' requests, let alone how it furthers compelling interests. Thus the denials were not narrowly tailored.

    **a.**    "Rather than rely on broadly formulated interests, courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Fulton*, 593 U.S. at 541 (cleaned up). This prong presents a "focused" inquiry:  MDA must "demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014) (citation omitted).  The question is not whether MDA had a compelling interest in denying exemptions.  Instead, the question is what MDA's compelling interest was in denying one each to Bellard, Speer, and Messick.  Defendants admit there is none, because unvaccinated staff created no health risk or other burden for Defendants, who could have provided exemptions to *every* unvaccinated employee.  ROA.8199–8200.

**b.**    Even if Defendants had a compelling interest, their chosen means must be narrowly tailored to achieve it.  Narrow tailoring requires employing only "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).  Denying exemptions must be "necessary" to achieving that interest.  *Fisher v. Univ. of Tex.*, 570 U.S. 297, 311–12 (2013).  "To do so in this context, … narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *Tandon*, 593 U.S. at 63.  Defendants cannot show "that public health would be imperiled by employing less restrictive measures."  *Id.* at 64 (internal quotation marks omitted).  If any "less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt v. Hobbs*, 574 U.S. 352, 365 (2015).  Granting 567 exemptions proves that the vaccine was not necessary, as did subsequent data.[13]  Because granting Plaintiffs exemptions would not interfere with achieving any compelling interest

---

[13] Unboosted vaccines do not effectively stop Covid.  ROA.8321–39.  And Plaintiffs tested positive for "natural immunity" antibodies, which are more effective.  ROA.8340–50.

(assuming such interest still exist),[14] Defendants' denial of Plaintiffs' requests fails strict scrutiny. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799–800 (2011).

### C. Defendants' contrived post-summary judgment standard for exemptions would violate both the Free Exercise Clause and the Establishment Clause.

After discovery closed, Defendants contradicted sworn deposition testimony to say—with no objective basis—that they simply did not believe Plaintiffs. ROA.6809–12. Perhaps embarrassed by such an unexplained reversal, weeks after this appeal was filed, Defendants filed a supplemental motion for reconsideration-of-reconsideration. There, they claim that Bellard's objection is not religious because he does not quote the Bible. ECF 117 at 25–28.[15] Shockingly, they claim that Speer's Bible quotes are not religious because she does not quote convincing Bible verses. ECF 117 at 25–27. Defendants also claim that Messick's saying

---

[14] Stopping Covid was a compelling interest, *see Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) (per curiam), when it was the Alpha strain; the later Omicron strain resembles merely the flu. ROA.3302–03. "[C]urrent burdens must be justified by current needs." *Shelby County v. Holder*, 570 U.S. 529, 542 (2013).

[15] Regarding ROA citations to ECF 117 and 119, see footnote 5 on page 15.

that he is led by the Holy Spirit through prayer is not a religious belief. ECF 117 at 25–27.

Defendants' clear hostility toward religious faith is shocking—and unconstitutional. If Defendants' newest argument could be taken seriously, it would raise grave constitutional concerns. Fully three First Amendment provisions disallow Defendants—collectively a *government employer*—from applying such a cynical view of religious sincerity. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in … religion … or force citizens to confess by word or act their faith therein." *W. Va. St. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). The Free Exercise Clause forbids Defendants' denying Plaintiffs exemptions on sincerity grounds in a manner suggesting normative disapproval of particular religious beliefs. *Lukumi*, 508 U.S. at 537–38. Defendants "cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 619 (2018). The Establishment Clause prohibits Defendants from preferring some religious beliefs over others. *Larson v. Valente*, 456 U.S. 228, 244 (1982). Such preference is a

hallmark of religious establishment, *Town of Greece v. Galloway*, 572 U.S. 565, 608 (2014) (Thomas, J., concurring in part and concurring in judgment), and so is forbidden, *see Kennedy*, 597 U.S. at 535–36. And to the extent Defendants do not like Plaintiffs' word choice describing their religious objections, "doing so constitutes impermissible viewpoint discrimination." *Shurtleff v. City of Boston*, 596 U.S. 243, 258 (2022) (internal quotation marks omitted). Those three Clauses are to be read harmoniously with each other, *see Kennedy*, 597 U.S. at 531–33.

Defendants are not showing Plaintiffs any sort of presumption of sincerity or good faith, instead evincing an inquisitorial disposition. *See* ECF 117 at 23–25. Defendants arrogate to themselves the mantle of religious arbiters, pontificating upon religious orthodoxy and which expressions satisfy the government.

That violates the First Amendment. And under Defendants' standard—raised for the first time after this appeal was filed—if any employer is unwilling to stipulate to sincerity, any employee must go all the way through trial before being able to prevail under the Free Exercise Clause or Title VII. *See* ECF 117 at 5, 15–17. That argument is odious to the Establishment Clause; these rights would be vitiated if they could

44

be vindicated only after many months of litigation and accompanying cost.

**D.   Defendants violated equal protection by granting exemptions to similarly situated employees.**

Defendants violated the Equal Protection Clause by granting 310 employees religious exemptions but denying exemptions to Plaintiffs and 170 other employees.  Under the Equal Protection Clause, U.S. Const. amend. XIV, § 1, "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "In order to state a claim for an equal protection violation, plaintiffs must show that two or more classifications of similarly situated persons were treated differently" by a state action.  *Butts v. Aultman*, 953 F.3d 353, 357 (5th Cir. 2020) (internal quotation marks omitted).

1.   Equal protection claims for government actions that burden fundamental rights trigger strict scrutiny.  *NRA v. McCraw*, 719 F.3d 338, 350 (5th Cir. 2013).  Free exercise is such a right.  *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 266 (5th Cir. 2010).  And in an equal protection challenge, "a trial court must make a factual determination that there was a strong basis in evidence for the conclusion that [the denial] was necessary." *Dean*, 438 F.3d at 455.

**2.**     Defendants must demonstrate a compelling interest in forcing Plaintiffs to take the vaccine, but not 310 similarly situated employees. *Fulton*, 593 U.S. at 541; *Burwell*, 573 U.S. at 726.   Accordingly, the question is whether Defendants had a compelling interest in denying religious vaccine exemptions to Bellard, Speer, and Messick while exempting other employees.   Defendants admit they cannot do this, ROA.8199, and ordered their expert to take no position on the issue, *see* ROA.3669–70.

For its second prong, strict scrutiny requires Defendants to adopt the "least restrictive means" to achieve their compelling interest. *McCullen*, 573 U.S. at 478.  It would have been less restrictive to grant three more religious exemptions to the 310 MDA had already granted.  It was obviously not necessary to deny Plaintiffs' requests because Defendants reversed course 30 days later after terminating Plaintiffs. ROA.8287–88.

Even Defendants' experts acknowledged there is no scientific rationale for exempting another doctor with a similar job while denying Plaintiffs exemptions, as happened here.  *See* ROA.3669–70, 3947–49, 8246–49. Defendants admitted an employee's position was irrelevant to

their consideration and that they could accommodate *every* objecting employee. ROA.8197–8200. Yet Defendants arbitrarily granted some while denying others asserting the same objection. ROA.8248–50. Defendants offered no justification, despite clear precedent that Defendants must offer *some* reason for the unequal treatment. *Stefanoff v. Hays County*, 154 F.3d 523, 525–26 (5th Cir. 1998).

By November 2021, both Varghese and Hagberg were informed by Plaintiffs and others that while some had exemptions granted, other similarly situated employees were denied. Yet they did not investigate, giving RAC carte blanche to deny exemptions, enabling equal protection violations. ROA.8198, 8220, 8241, 8252–53, 8254–56. Varghese and Hagberg refused even to speak with Bellard and Speer about their denials. ROA.8219–21, 8236–41.

Although hundreds of requests were denied while others asserting the same objections were granted, when employees sought explanations, Varghese did not respond or review the work of RAC. ROA.8198, 8247–56. Incredibly, he had no idea what qualified any RAC members to do that job or what criteria they used to evaluate requests. ROA.8190–94. And he took specific steps to *ensure* Bellard and Speer received no

information regarding why their requests were denied. ROA.8219, 8236–39. Defendants violated equal protection.

## E. Defendants violated due process by refusing to give reasons for, or appeals from, the denials.

Even if the denials did not violate Plaintiffs' rights, the *manner* of those denials did. The Due Process Clause guarantees that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.

"The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1014 (5th Cir. 2023). Free exercise is a liberty interest. *See McDonald v. City of Chicago*, 561 U.S. 742, 764 & n.12 (2010).

Additionally, Plaintiffs have a property interest in the job that they hold as employees of a Texas public university. *Walsh v. Hodge*, 975 F.3d 475, 481, 482 n.12 (5th Cir. 2020). Terminating Plaintiffs midyear and suspending their privileges deprived them of a property interest. The test "is quite broad: A person's interest in a benefit is a property interest for due process purposes if there are such rules or mutually explicit

understandings that support his claim of entitlement to the benefit."
*Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 323 (5th Cir. 2022)
(cleaned up).   This includes Plaintiffs' privileges, which Defendants
stained with a black mark.   "As with other forms of public employment,
medical staff privileges can constitute a property interest entitling the
employee to procedural due process before termination…   Physicians
have a property interest in clinical privileges if their contracts explicitly
or implicitly allow termination only for cause."   *Shaboon v. Duncan*, 252
F.3d 722, 732 (5th Cir. 2001).

Pisters, Morris, Varghese, and Hagberg violated due process,
making it explicit in their written policy that no reasons would be given
for request denials, ROA.8207–11, and denying Plaintiffs and others any
opportunity to appeal denials, even though termination would result,
ROA.8206–08.   Varghese and Hagberg personally enforced the policy
against Speer and Bellard when they sought explanations for their
denials, agreeing to provide them nothing and ensuring there was no
avenue for appeal.   ROA.8219–21, 8236–41.[16]

---

[16] Until their sham affidavit accompanying summary judgment,
Defendants refused to even offer a reason why they denied Plaintiffs'
requests, merely saying they cannot put themselves in the same "frame

Defendants established a five-person religious accommodation committee (RAC) to evaluate religious exemption requests, but neither RAC nor anyone at MDA was permitted to provide any reason for why they denied requests and disallowed appeals. ROA.8207–09. Pisters, who has ultimate authority over MDA policy, approved that recommendation. ROA.8209. Varghese implemented that policy as its "governor." ROA.8210. Hagberg, who is responsible for all faculty, refused to provide reasons to Bellard and Speer regarding their November 2021 denials. She ensured that even faculty, who otherwise have a right to appeal adverse employment decisions to the Faculty Senate, were unable to appeal exemption denials. ROA.8211. This effectively forbade the Faculty Senate from doing anything about Plaintiffs' suspension and effective termination after their requests were denied. ROA.8220–21, 8239–40.[17]

---

of mind," and without notes (which they did not take), they have no idea why the requests were denied. ROA.8202–06.

[17] Defendants even amended the Medical Staff Bylaws in September 2022 to make failure to comply with a vaccine policy an automatic suspension, without due process. ROA.8211.

"A procedural due process claim turns on (1) whether there exists a liberty or property interest which has been interfered with by the State, and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient." *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864 (5th Cir. 2022) (internal quotation marks omitted). "One of the basic procedural requirements of administrative [actions] is that an agency must give adequate reasons for its decisions," and government actors violate a person's rights when they do not provide even minimal reasoning for their decision. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). As the D.C. Circuit explained:

> Due process ordinarily requires that procedures provide notice of the proposed official action and 'the opportunity to be heard at a meaningful time and in a meaningful manner.' . . . Both the Supreme Court and this Court have recognized that the right to know the factual basis for the action and the opportunity to rebut the evidence supporting that action are essential components of due process.

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014).

Indeed, "this lack of process constitutes a clear constitutional violation, notwithstanding" any interest Defendants might have that would otherwise be constitutionally sufficient. *Id.* at 320; *see also Greene*

*v. McElroy*, 360 U.S. 474, 496–97 (1959); *Robbins v. U.S. R.R. Ret. Bd.*, 594 F.2d 448, 451 (5th Cir. 1979).  Yet Pisters, Morris, Varghese, and Hagberg ignored these requirements when creating their Vaccine Mandate, refusing as a policy to provide reasons or appeals regarding denials.  ROA.8206–12, 8245.[18]

Due process requires government to provide a person "with a meaningful opportunity to be heard." *Freeman v. City of Dallas*, 186 F.3d 601, 606 (5th Cir. 1999), *rev'd in part en banc*, 242 F.3d 642 (5th Cir. 2001).  And even "due process violations with *de minimis* damages are constitutionally-cognizable claims, because the right to procedural due process is absolute in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 222–23 (5th Cir. 2012) (cleaned up).  Yet Defendants did no such thing.

---

[18] Defendants permitted submitting new requests, but without employees knowing why the original requests were denied.  ROA.8259–61.  And with no criteria to evaluate such requests, ROA.8192–93, Defendants themselves could not articulate what information they were looking for.

Due process also requires establishing a standard that does not encourage arbitrary and discriminatory application. *See McDonnell v. United States*, 579 U.S. 550, 576 (2016). Yet Defendants appointed five people with no particular qualifications, asked them to apply Title VII however they felt appropriate, then stood back to watch the predicable train wreck—a process resulting in erroneous and irreconcilable decisions. ROA.8190–93. The clearest example is Gallagher, who is unable to explain why she voted to approve Speer's accommodation request in November 2021, but then voted to deny Speer's *substantively identical request* in January 2022. ROA.8244–45. Gallagher's inconsistency is a textbook example of arbitrariness and an obvious result of Defendants' unconstitutional process. Defendants also had to reverse 173 denials—including Plaintiffs'—*after* termination, all without explanation. ROA.8284–86.

### F.    Defendants imposed unconstitutional conditions by refusing to renew employment contracts because of Plaintiffs' claiming religious exemptions.

When Plaintiffs asserted their free-exercise rights, seeking exemptions to Defendants' Vaccine Mandate, Defendants responded by giving notice that they would not renew Plaintiffs' employment contracts

unless Plaintiffs forfeited their religious beliefs and got the vaccine. Specifically, with Pisters's approval, Hagberg provided official notice of non-renewal of employment. That imposed an unconstitutional condition.

The unconstitutional conditions doctrine prohibits government from denying a benefit to someone on a basis that violates his constitutionally protected rights, even if he was not entitled to that benefit. *Rumsfeld v. FAIR*, 547 U.S. 47, 59 (2006). It "forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). "There are some rights and freedoms so fundamental to liberty that they cannot be bargained away in a contract for public employment." *Borough of Duryea v. Guarieri*, 564 U.S. 379, 387 (2011). For example, "a person may not be compelled to choose between the exercise of a First Amendment right and participation in an otherwise available public program." *Thomas*, 450 U.S. at 716. Relevant here, "it is unconstitutional 'to condition the availability of benefits' on a person's 'willingness to violate a cardinal principle of her religious faith' because doing so 'effectively penalizes the free exercise of her

constitutional liberties.'" *ESI/Employee Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 721 (E.D. Tex. 2020) (quoting *Sherbert v. Verner*, 374 U.S. 398, 406 (1963)).  This Court made it clear that an employee's First Amendment Rights were violated when forced to choose between "their job(s) and their jab(s)" *before* Defendants gave Plaintiffs the same Hobson's choice.  *Sambrano,* 2022 WL 486610, at *8 (citing *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021)).  Defendants cannot impose such conditions.

## III.   PLAINTIFFS ARE ENTITLED TO RELIEF UNDER TITLE VII.

### A.   This Court has jurisdiction to decide the Title VII claim now, and should do so for judicial economy.

For their Title VII claim, Plaintiffs were denied relief because the district court erred on a pure question of law, so this Court should also resolve Defendants' Title VII liability now.  This Court has jurisdiction to do so, because "once an order has been deemed appealable under § 1292(a)(1), the entire order, not merely the propriety of injunctive relief, comes within this court's scope of review." *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 520 n.3 (5th Cir. 2002); *see also Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 n.2 (5th Cir. 2010).  This includes the trial court's reconsideration ruling, because once an appeal is before this

Court, "the permissible scope of review extends to related orders not specifically appealed." *In re Seabulk Offshore, Ltd.*, 158 F.3d 897, 899 n.2 (5th Cir. 1998).

There are no genuine issues of material fact here, Title VII law is clear, and was fully briefed below. The only item the district court held should go to a jury is undue hardship, erring as a matter of law because MDA claims no hardship, resting its denial of accommodation solely on sincerity of religious belief.

When thus fully developed, this Court should decide questions that "'may be inextricably bound up with the decision or may be considered in the wise administration of appellate resources.'" *Daves*, 22 F.4th at 528 (quoting 16 WRIGHT & MILLER'S FED. PRAC. & PROC. § 3921.1 (3d ed. Apr. 2021 update)). This Court should do so here, correcting the lower court's error that undue burden is a jury question even when not asserted at all. This Court should hold that instead there is no undue burden as a matter of law.

### B. The district court correctly held that Plaintiffs established a prima facie case that MD Anderson violated Title VII.

Title VII requires employers to provide reasonable accommodation

to employees whose religious beliefs, practices, or observances conflict with a work rule absent undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 457–58 (2023). "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Id.* at 473.

Here, MDA admits there was no hardship in granting Plaintiffs' accommodation requests. ROA.8198–8200. The court thus erred as a matter of law by holding that a jury must decide that question. ROA.8457–58. Given that the district court correctly held that Plaintiffs established both sincerity and adverse action as matters of law, ROA.8873, Plaintiffs are entitled to summary judgment on Title VII.

Claims for failure to accommodate follow the *McDonnell Douglas* framework:

> The employee must first establish a prima facie case of religious discrimination. If she does, the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship.... To establish a prima facie case of religious discrimination under Title VII, the plaintiff must present evidence that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered

an adverse employment action for failing to comply with the conflicting employment requirement.

*Davis v. Fort Bend County,* 765 F.3d 480, 485 (5th Cir. 2014) (internal quotation marks omitted).

**1.** The IFC did not modify federal law on religious accommodations for work rules or impose additional burdens.[19]  86 Fed. Reg. at 61572.  MDA accordingly crafted an accommodation process. ROA.8187.

Consistent with MDA's Vaccine Mandate and EEOC Guidance, each Plaintiff submitted a written request for accommodation, detailing their religious objections.  Bellard first did so in November 2021, explaining that his Catholic faith forbade him from taking a vaccine developed with aborted fetal cells. ROA.8217–18.  He submitted a second request in February 2022, including his faith journey to obey God's command to not take a vaccine that he believed violated God's law.

---

[19] EEOC provided updated guidance emphasizing employees' rights to religious accommodation from any work rule mandating the Covid vaccine, reaffirming longstanding guidance on employees' entitlement to reasonable accommodation.  EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,* https://tinyurl.com/3snbxhc5 (last visited May 28, 2024) (hereinafter *What You Should Know About … EEO Laws*).

ROA.8221–23.[20]   And Messick requested accommodation in November 2021, articulating his religious beliefs that conflict with receiving the vaccine, noting that he felt convicted by the Holy Spirit after prayer that the vaccine was inconsistent with God's will for him.   ROA.8228–30. Likewise, Speer submitted her request for religious accommodation in November 2021 and again in January 2022, ROA.8241–42, describing her biblical beliefs that God protects her body and vaccines developed with aborted fetal cells are sinful, ROA.8232–36.   Confusingly, Gallagher voted to approve Speer's November 2021 request, then voted to deny the *same* substantive request in January 2022, and cannot explain why. ROA.8244–45.

RAC denied Plaintiffs without explanation each time, ROA.8225, 8230, 8243, and ignored Plaintiffs' attempts to obtain the reasons. ROA.8236–41.   Moreover, RAC never contacted Plaintiffs concerning their requests.   ROA.8226, 8231, 8245.   Plaintiffs elaborated upon their

---

[20] Bellard did not repeat his religious objections regarding aborted fetal cells because he was told MDA would not approve a request asserting that basis.   ROA.8224.   Ironically, RAC later granted several such requests.   ROA.8224.

religious faith and religious vaccine objections during their depositions. ROA.8216, 8227, 8231.

Plaintiffs' requests for religious accommodation clearly established the religious basis for entitlement to accommodation under Title VII. The law is that:

> [b]ona fide religious beliefs include "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." A court's inquiry is limited to focusing upon the individual's motivation. Specifically, a court's task is to decide "whether [the individual's beliefs] are, *in his own scheme of things,* religious." In this regard, a belief is "religious" if it is "[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by ... God." Conversely, whether the belief itself is central to the religion, i.e., whether the belief is a true religious tenet, is "not open to question."

*Davis*, 765 F.3d at 485 (citations omitted). Plaintiffs' requests for religious accommodation clearly meet this standard.

Inquiries into employees' religious beliefs, though part of a prima facie case, are necessarily limited. Longstanding EEOC Guidance explains:

> Where the accommodation request itself does not provide enough information to enable the employer to make a determination, and the employer has a bona fide doubt as to the basis for the accommodation request, it is entitled to make a limited inquiry into the facts and circumstances of the employee's claim that the belief or practice at issue is religious

and sincerely held, and that the belief or practice gives rise to the need for the accommodation. Whether an employer has a reasonable basis for seeking to verify the employee's stated beliefs will depend on the facts of a particular case.

EEOC, *EEOC Guidance on Religious Discrimination, Section 12-IV.A.2* (Jan. 15, 2021), https://tinyurl.com/2dvsdece.[21] Even its updated Guidance specifically addressing Covid vaccine mandates made clear inquiries into an employee's religious beliefs remain limited:

> Generally, under Title VII, an employer should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances. However, if an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief, the employer would be justified in making a limited factual inquiry and seeking additional supporting information.

*What You Should Know About … EEO Laws*, *supra* note 18; *see also Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013) (holding that "sincerity inquiry … must be handled with a light touch, or 'judicial

---

[21] The Guidance also provides: "employers who unreasonably request unnecessary or excessive corroborating evidence risk being held liable for denying a reasonable accommodation request, and having their actions challenged as retaliatory or as part of a pattern of harassment." EEOC, *EEOC Guidance on Religious Discrimination, Section 12-IV.A.2* (Jan. 15, 2021).

shyness'") (collecting authorities), *abrogated on other grounds by Groff*, 600 U.S. at 467 n.14.

But not only did MDA never question the sincerity or religious nature of Plaintiffs' objections to the vaccine, after Plaintiffs filed suit, Defendants' subsequent granting exemptions to Plaintiffs alone establishes that Defendants *acknowledge* Plaintiffs' sincerity. *See Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 792 (5th Cir. 2012). They cannot deny that now.

RAC offered nothing to question the sincerity of Plaintiffs' religious beliefs regarding the vaccine until summary judgment was filed. RAC's decision was based exclusively on Plaintiffs' written requests and RAC never asked for any additional information or sought clarification. ROA.8195. No one on RAC can explain why they voted to grant or deny any request from any employee, including Plaintiffs. ROA.8202–05.[22] Each consistently said they could not put themselves in the same "mindset" today as they were in then, as if an employee's right to religious accommodation was contingent on the decisionmaker's frame of mind at

---

[22] It seems no one at MDA is capable determining if an employee's Title VII request should be granted, including Varghese. ROA.8205. Apparently they had no idea what they were doing.

the time.  ROA.8202.[23]

At least that was Defendants' story until after summary judgment, where they now claim they concluded that Plaintiffs were actually not making religious claims, as discussed above in Part III.B.  As explained there, Defendants' standard—first announced after summary judgment and obviously contrived—violates both the Free Exercise and Establishment Clauses—which MDA as a state employer cannot adopt even if otherwise allowed by Title VII.

Applying any (or no) standard, RAC's ad hoc decisions resulted in half of all requests each month being denied, and 173 employees being improperly put out on leave and told they were being fired only to have those decisions reversed 30 days later without any explanation.  ROA.8284.  The process was arbitrary at best and resulted in flagrant violations of Plaintiffs' right to religious accommodation under Title VII.  The district court rightly held that Plaintiffs established their prima facie case.

---

[23] MDA granted some requests based on the same religious objections articulated by Plaintiffs, but for some unknown reason denied Plaintiffs' requests.  ROA.8248–50.  As noted, MDA cannot even offer a basis for denying Plaintiffs' requests.

**2.** As a result of MDA's inexplicable denial of their requests for religious accommodation, MDA took adverse action against Plaintiffs by terminating their employment on February 23, 2022, barring them from campus, suspending their clinical privileges, and formally notifying that their employment contracts would not be renewed for not getting the vaccine. ROA.8263–79. Supervisors were instructed to tell colleagues and patients that Plaintiffs were "no longer with the institution." ROA.8263.

Such actions more than qualify as adverse employment action under Title VII. This Court recently held that "the days and hours that one works are quintessential 'terms or conditions' of one's employment" and even discriminatory scheduling constitutes adverse employment action. *Hamilton v. Dallas County,* 79 F.4th 494, 503 (5th Cir. 2023) (en banc). MDA's actions exceed "de minimis workplace trifles" as MDA's conduct clearly impacted Plaintiffs' terms and conditions of employment. *Id.* at 505. The district court correctly held MDA took adverse action.

In addition, Plaintiffs were denied their First Amendment rights to free exercise of religion, which is an irreparable injury in Title VII cases. Indeed:

> This court and the Supreme Court have held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Indeed, we recently held that plaintiffs had suffered irreparable harm from being coerced into "a choice between their job(s) and their jab(s)," or "between their beliefs and their benefits."

*Sambrano*, 2022 WL 486610, at *8 (cleaned up). Plaintiffs were effectively terminated, without explanation other than refusing to get "the jab." ROA.8262.

### C. Title VII does not allow an undue hardship defense that MDA never claimed and did not offer even a scintilla of evidence to support.

"An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees but is not required to incur undue hardship." *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). "If the plaintiff can satisfy the prima facie showing, the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

Defendants admit it would not have caused an undue hardship to accommodate Plaintiffs' requests. Indeed, Defendants initially granted 310 requests for religious accommodation (many for the same reasons

that formed the basis for Plaintiffs' requests). ROA.8248–49, 8262. Defendants admit there would have been no undue hardship to accommodate *everyone* who requested a religious accommodation from the Vaccine Mandate. ROA.8198–8200. Accordingly, MDA cannot establish that it failed to accommodate Plaintiffs because doing so would cause an undue hardship. The district court erred by holding this issue must go to a jury.

Any claim that MDA accommodated Plaintiffs when it reversed its prior denial on March 21, 2022, is meritless. An employer cannot avoid liability after subjecting an employee to an adverse employment action for reversals after being sued.[24] *Crawford v. Carroll*, 529 F.3d 961, 972 (11th Cir. 2008); *Phelan v. Cook County*, 463 F.3d 773, 780 (7th Cir. 2006)*, overruled in part by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). Moreover, Plaintiffs' privileges suspensions did not magically disappear when they returned to work. MDA cannot un-ring that bell; Plaintiffs must admit that damaging fact whenever asked.

Unable to prove that accommodating Plaintiffs would constitute an undue hardship, MDA violated Title VII when it failed to provide

---

[24] This lawsuit was filed before MDA reversed its prior denials.

accommodation after receiving notice of Plaintiffs' sincerely held religious beliefs. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986); *see also Beadle v. City of Tampa,* 42 F.3d 633, 636 (11th Cir. 1995). Plaintiffs are entitled to summary judgment.

## IV. REMAINING INJUNCTION FACTORS ARE SATISFIED.

Plaintiffs are entitled to a permanent injunction. "A party seeking a permanent injunction must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 576 (5th Cir. 2021) (internal quotation marks omitted). Plaintiffs succeed on the merits. The violation of any constitutional right is irreparable harm, *BST Holdings*, 17 F.4th at 618 & n.21, even for a minimal period of time, *Tandon*, 593 U.S. at 64. And the balance-of-hardships and public-interest factors merge when injunctive relief is sought against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Those factors are satisfied because protecting constitutional rights "is always in the public

interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013); s*ee also Sambrano*, 2022 WL 486610, at *8.

## CONCLUSION

For the foregoing reasons, this Court should reverse the court below regarding mootness, and hold in Plaintiffs' favor on the merits of the § 1983 and Title VII claims.

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. CHRISTOPHER BARTOLOMUCCI
  *Counsel of Record*
KENNETH A. KLUKOWSKI
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
cbartolomucci@schaerr-jaffe.com

*Counsel for Plaintiffs-Appellants*

Dated:  May 30, 2024

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on May 30, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook font.

I further certify that (1) all privacy redactions have been made; and (2) that the brief has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.


*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

Dated: May 30, 2024